[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Deborah Nuzzo, filed a four count complaint on July 26, 1999, alleging that the defendants, Russell Hitchcock and Marilyn CT Page 3078 Pierson, harmed the plaintiff by either making or allowing harassing phone calls to the plaintiff. Nuzzo reported the harassment to the police; the police intercepted several calls and traced them to the telephone number registered under Pierson's name. The police arrested Hitchcock. Counts one and two of the complaint allege that Hitchcock negligently inflicted emotional distress and created a negligent nuisance by making harassing telephone calls to Nuzzo. Counts three and four of the complaint allege that Pierson, Hitchcock's wife, was negligent in failing to monitor calls from the home that she owned and because she knew or, in the exercise of reasonable care, should have known that the telephone line registered in her name was being used to place harassing telephone calls.
On March 1, 2000, the defendant, Pierson, filed a motion for summary judgment on the ground that there is no genuine issue of material fact as to her lack of duty to Nuzzo and that she is entitled to judgment as a matter of law. Pierson submitted a memorandum of law and her own affidavit in support of the motion.
Nuzzo filed an objection to Pierson's motion for summary judgment, asserting that there are questions of fact as to whether Pierson had a duty to control the conduct of Hitchcock, her husband, so as to prevent him from causing harm to Nuzzo under the circumstances of the case. Nuzzo argues further that summary judgment is inappropriate for the additional reason that there are questions of fact as to whether Pierson's allegedly negligent maintenance of the telephone line created a nuisance.[1]
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . ." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059
(2000).
"Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in an ordinary matter." (Internal quotation marks omitted.) Fogarty v. Rashaw, 193 Conn. 442,446, 476 A.2d 582 (1984). "Summary judgment procedure is especially CT Page 3079 ill-adapted to negligence cases, where . . . the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation. . . ." (Internal quotation marks omitted.) Michaud v.Gurney, 168 Conn. 431, 434, 362 A.2d 857 (1975). "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment [however] because the question is one of law." Pion v. SouthernNew England Telephone Co., 44 Conn. App. 657, 660, 691 A.2d 1107 (1997).
Pierson asserts that she did not owe a duty to Nuzzo, an unknown third person, and that she had no knowledge of Hitchcock's, her husband's alleged activities. Pierson argues that it was not her responsibility to monitor her husband's use of the family phone. Pierson also argues that she could not have foreseen the alleged activities of her husband because he did not have a history of making harassing phone calls or sexual harassment in general. Therefore, Pierson argues that she can not be found negligent for the alleged actions of her spouse. Pierson repeats the same assertions in her affidavit.
In response, Nuzzo argues that there are genuine issues of material fact as to whether Pierson knew or should have known that her husband or an unknown third person could use the phone illegally.[2]
Specifically, Nuzzo argues that in light of Hitchcock's long-standing problems with alcohol, Pierson knew or should have known that Hitchcock could make harassing telephone calls, and therefore Pierson owed Nuzzo a duty to exercise reasonable care in preventing the harassing phone calls. Additionally, Nuzzo argues that because there were two unattended phone lines in the attic and outside, as admitted by Hitchcock, there exists a question of material fact as to whether Pierson negligently allowed unknown third persons to gain access to her phone line, thereby creating a nuisance. Nuzzo submits relevant pages from the deposition transcript of Hitchcock's testimony to show 1) that Hitchcock may have suffered from alcoholism and Pierson therefore, should have foreseen the harm complained of would occur, and 2) unknown third persons could have accessed Pierson's telephone line from two unattended phone lines in the attic and outdoors and therefore, Pierson owed Nuzzo a duty to use reasonable care with respect to telephone lines accessible to unknown third parties.
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 566, 707 A.2d 15 (1998). "Negligence is a breach of duty." (Internal quotation marks omitted.) Petriello v.Kalman, 215 Conn. 377, 382, 576 A.2d 474 (1990). "The existence of a duty is a question of law and only if such a duty is found to exist does the CT Page 3080 trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, 250-51, ___ A.2d ___ (2001).
The plaintiff has not cited any case law, and this court is not aware of any, which requires a spouse to control or supervise the conduct of the other spouse toward an unknown third person by virtue of the spousal relationship alone. Generally, "[t]here is no duty so to control the conduct of a third person as to prevent him from causing . . . harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." 2 Restatement (Second), Torts, § 315, p. 122 (1965). The "special relations" that have been recognized by the Restatement are those between parent and child (§ 316), master and servant (§ 317), landowner and licensee (§ 318), warden and ward (§§ 319 320).[3] The spousal relationship does not by itself give rise to a "special relation" within the meaning of § 315. See id, § 314A, comment b, p. 119; see alsoAndrade v. Baptiste, 411 Mass. 560, 565, 583 N.E.2d 837, 839 (1992) discussing Petersen v. Heflin, 163 Mich. App. 402 (1987) (stating that the existence of the husband-wife relationship does not give rise to a special duty on the wife's part to control her husband's behavior or to protect others from his conduct.) Under Restatement (Second), supra, § 315, Pierson, the wife, had no duty to control the conduct of her husband, Hitchcock, so as to prevent him from causing harm, here making the alleged harassing telephone calls, to Nuzzo, a third person unknown to Pierson unless a "special relation" existed between Pierson and her husband or between Pierson and Nuzzo. There is no allegation, let alone proof, that a "special relation" within the meaning of the Restatement rules (specifically §§ 316-320 and 314A (4))[4] existed between Pierson and Hitchcock, or Pierson and Nuzzo.[5] Specifically, there is no allegation that Pierson ever took charge or custody of her husband because of his alleged alcoholic problems, as required by law or voluntarily, thereby assuming a duty to control her husband's conduct to prevent him from doing harm to others or himself. See id., §§ 319, 320, 314 A (4). CT Page 3081
It is also not availing for Nuzzo to argue that Pierson was negligent to permit her husband to have access to the telephone line registered under her name and located within her home if she knew, or should have known, that her husband was likely to abuse the telephone. "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Id., § 308, p. 100. The Restatement rule, however, would apply only if Hitchcock needed his wife's consent to use the telephone. See id., comment a, p. 100. There is no such allegation. The presumption is that Hitchcock had equal control of the telephone line and did not need his wife's permission to use the telephone located within the marital home.
To the extent that Nuzzo asserts a theory of negligent entrustment, it is also not availing. Nuzzo argues that Pierson, knowing what she knew about her husband's alleged alcoholic problems, should have prevented him from using the telephone for an illegal purpose. "Normally the actor has much less reason to anticipate intentional misconduct that [she] has to anticipate negligence. In the ordinary case [she] may reasonably proceed upon the assumption that others will not interfere in a manner intended to cause harm to anyone. This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no on will violate the criminal law. Even where there is a recognizable possibility of the intentional interference, the possibility may be so slight, or there may be so slight a risk of foreseeable harm to another as a result of the interference, that a reasonable [person] in the position of the actor would disregard it." Id., § 302 B, comment d, p. 94. "An act or an omission [, however,] may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." Id., § 302 B, p. 94. For an example of situations in which an actor is required to anticipate and guard against the intentional or even criminal misconduct of others is "[w]here the actor entrusts an instrumentality capable of doing serious harm if misused, to one whom [she] knows, or has strong reason to believe, to intend or to be likely to misuse it to inflict intentional harm." Id., § 302 B, comment e (E), p. 92. As mentioned above, there is no allegation that the telephone line was under the exclusive control of Pierson, or that her husband needed her consent to use the telephone in his marital home. There was no "entrustment" here, and the theory of negligent entrustment fails for this reason alone. In addition, Nuzzo has offered no evidence to show that Pierson had known that her husband used CT Page 3082 their home telephone to harass Nuzzo or anyone else prior to his arrest. Nor has Nuzzo offered any evidence to show Pierson should have known or foreseen that her husband had a tendency to make harassing telephone calls. It is not foreseeable from Hitchcock's alleged alcoholism that he would make harassing telephone calls. Driving under the influence maybe foreseeable for an alcoholic, but not making harassing telephone calls.
Nuzzo asserts that there is a question of fact as to whether Pierson's maintenance of the phone line created a nuisance. "A nuisance, whether public or private, describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property. . . . The term nuisance refers to the condition that exists and not to the act or failure to act that creates it. . . . If the condition claimed to be a nuisance arises out of the creator's unintentional but negligent act, i.e., a failure to exercise due care, the resulting condition is characterized as a negligent nuisance. . . . In order to establish a cause of action in nuisance, the plaintiff must prove that the inherently dangerous condition is a continuing one and was the proximate cause of the plaintiff's injuries and damages." Quinnett v. Newman, 213 Conn. 343,348-49, 568 A.2d 786 (1990). Because it is not alleged, let alone proven, that keeping a telephone outlet at home or outside the house or in the attic created an inherently dangerous condition that had a natural tendency to inflict injury upon persons, the nuisance claim fails as a matter of law.
Because the record shows that Pierson had no duty as a matter of law to control the conduct of her husband so as to prevent him from harassing Nuzzo, and it was not foreseeable to her that her husband would make the harassing telephone calls to Nuzzo, Pierson's motion for summary judgment is granted.
Howard F. Zoarski Judge Trial Referee